# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| RICHARD MONTALVO, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| CHICAGO POLICE OFFICERS JOHN A. ADREANI, Star No. 6185, ANGELO TRAVLOS, Star No. 16236, NOEL C. LIBOY, Star No. 13447, DAVID N. PEREZ, Star No. 15791, LUIS A. MARIN, Star No. 19521, ANGEL A. COLINDRES, Star No. 19764, GREGORY G. ZULLO, Star No. 6727, HENRY B. VIA, Star No. 12218, JUAN H. MARTINEZ, Star No. 7952, DAVID E. OLIVARES, Star No. 15135, ROBERT LOPEZ, Star No. 5256, SEAN M. RONAN, Star No. 2010, SEAN R. LOUGHRAN, Star No. 540, and the CITY OF CHICAGO, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

No. 10 CV 7044

Judge Robert Gettleman

## FIRST AMENDED COMPLAINT

Plaintiff, Richard Montalvo, through his attorneys, Christopher D. Mickus and Sarah G. Malia of Neal, Gerber & Eisenberg LLP, and for his First Amended Complaint, states as follows:

## NATURE OF CLAIM

1. This is an action pursuant to 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution. As alleged more fully herein, Mr. Montalvo was incarcerated for 282 days following his arrest on November 3, 2008, which arrest was precipitated and based upon an improper search warrant. In the absence of the improper search warrant, Mr. Montalvo would not have been arrested on November 3, 2008, nor would he have been charged with baseless violations of the law which ultimately were dismissed against him.

Most significantly, in the absence of the improper warrant, Mr. Montalvo would not have been wrongfully incarcerated. As a result of the conduct alleged more fully herein, Mr. Montalvo has been injured. In this action, Mr. Montalvo names as Defendants Chicago Police Officers John A. Adreani ("Adreani"), Angelo Travlos ("Travlos"), Noel C. Liboy ("Liboy"), David N. Perez ("Perez"), Luis A. Marin ("Marin"), Angel A. Colindres ("Colindres"), Gregory G. Zullo ("Zullo"), Juan H. Martinez ("Martinez"), David E. Olivares ("Olivares"), Robert Lopez ("Lopez"), Sean M. Ronan ("Ronan"), Henry B. Via ("Via") and Sean R. Loughran ("Loughran") (collectively, the "Chicago Police Officers"), in their official and individual capacities, and the City of Chicago.

2. Defendant Adreani, with a reckless disregard for the truth, made false statements while seeking a search warrant, thereby violating Mr. Montalvo's rights under the United States Constitution, and resulting in significant personal injury.

3. In addition to the improprieties related to the issuance of the search warrant itself, the Chicago Police Officers performed various acts incident to the execution of the search warrant obtained by Defendant Adreani, thereby violating Mr. Montalvo's rights under the United States Constitution, and resulting in significant personal injury.

4. These violations and injuries occurred as a result of policies, customs and/or practices of the City of Chicago.

**JURISDICTION AND VENUE**

5. Jurisdiction exists in this Court pursuant to 28 U.S.C. §1331 and §1343, because the allegations in the First Amended Complaint are based upon violations of the rights conferred by the United States Constitution and federal statutes.

6. Venue exists in this Court pursuant to 28 U.S.C. §1391(b)(2), because the events or omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

7. Mr. Montalvo was, at all relevant times, a citizen of the State of Illinois and resided within Chicago, Cook County, Illinois at 1642 W. LeMoyne in the second floor apartment, with his 7-year old daughter.

8. Defendant Adreani was, at all relevant times, a duly appointed officer in the Chicago Police Department and a citizen of the State of Illinois. He engaged in the conduct complained of while in the course and scope of his employment and under color of law.

9. Defendant Travlos was, at all relevant times, a duly appointed officer in the Chicago Police Department and a citizen of the State of Illinois. He engaged in the conduct complained of while in the course and scope of his employment and under color of law.

10. Defendant Liboy was, at all relevant times, a duly appointed officer in the Chicago Police Department and a citizen of the State of Illinois. He engaged in the conduct complained of while in the course and scope of his employment and under color of law.

11. Defendant Perez was, at all relevant times, a duly appointed officer in the Chicago Police Department and a citizen of the State of Illinois. He engaged in the conduct complained of while in the course and scope of his employment and under color of law.

12. Defendant Marin was, at all relevant times, a duly appointed officer in the Chicago Police Department and a citizen of the State of Illinois. He engaged in the conduct complained of while in the course and scope of his employment and under color of law.

13. Defendant Colindres was, at all relevant times, a duly appointed officer in the Chicago Police Department and a citizen of the State of Illinois. He engaged in the conduct complained of while in the course and scope of his employment and under color of law.

14. Defendant Zullo was, at all relevant times, a duly appointed officer in the Chicago Police Department and a citizen of the State of Illinois. He engaged in the conduct complained of while in the course and scope of his employment and under color of law.

15. Defendant Via was, at all relevant times, a duly appointed officer in the Chicago Police Department and a citizen of the State of Illinois. He engaged in the conduct complained of while in the course and scope of his employment and under color of law.

16. Defendant Martinez was, at all relevant times, a duly appointed officer in the Chicago Police Department and a citizen of the State of Illinois. He engaged in the conduct complained of while in the course and scope of his employment and under color of law.

17. Defendant Olivares was, at all relevant times, a duly appointed officer in the Chicago Police Department and a citizen of the State of Illinois. He engaged in the conduct complained of while in the course and scope of his employment and under color of law.

18. Defendant Lopez was, at all relevant times, a duly appointed officer in the Chicago Police Department and a citizen of the State of Illinois. He engaged in the conduct complained of while in the course and scope of his employment and under color of law.

19. Defendant Ronan was, at all relevant times, a duly appointed officer in the Chicago Police Department and a citizen of the State of Illinois. He engaged in the conduct complained of while in the course and scope of his employment and under color of law.

20. Defendant Loughran was, at all relevant times, a duly appointed officer in the Chicago Police Department and a citizen of the State of Illinois. He engaged in the conduct complained of while in the course and scope of his employment and under color of law.

21. Defendant City of Chicago is a municipal corporation, duly organized under the laws of the State of Illinois. Defendant City of Chicago maintains, manages and/or operates the

Chicago Police Department, the Independent Police Review Authority, and the Chicago Police Department Internal Affairs Division.

## STATEMENT OF FACTS

22. On November 3, 2008, Defendant Travlos broke down the door to Mr. Montalvo's apartment building at approximately 9:05 pm while Mr. Montalvo and his 7-year-old daughter were sleeping inside their residence on the second floor of the building.

23. At that time, Defendants Travlos, Liboy, Perez, Marin, Colindres, Zullo, Martinez, Olivares, Lopez and Ronan (collectively, the "Executing Officers"), were executing a search warrant for the building's third floor apartment and attic (the "November Warrant").

24. Defendant Loughran was the supervising lieutenant in charge of the execution of the November Warrant.

25. Defendant Via was the evidence supervisor for evidence seized in the execution of the November Warrant.

26. Defendant Adreani obtained the November Warrant from the Circuit Court of Cook County on the basis of his statements in an affidavit which was based solely on the representations of an anonymous informant, "John/Jane DOE" ("Doe"). In this regard, the probable cause required for issuing the November Warrant was based only on Defendant Adreani's affidavit which, in turn, was based solely and exclusively on information allegedly provided to Defendant Adreani by an unidentified informant.

27. Doe claimed that s/he had purchased cocaine from Mr. Montalvo at "Montalvo's residence with attached attic located at 1642 West LeMoyne 3rd floor" and that Mr. Montalvo had afterward taken Doe to the attic of the building to show him/her a handgun.

28. Doe, an admitted cocaine user for the five years prior to the date of this incident, gave his/her statement to Defendant Adreani on the same day that he/she claimed to have purchased, used, and experienced a "euphoric high sensation" from the use of the cocaine.

29. On information and belief, Defendant Adreani did nothing to corroborate Doe's statement beyond driving Doe by the apartment building located at 1642 W. LeMoyne and showing he/she a photograph of only Mr. Montalvo on the same day that Doe stated he/she had used the cocaine.

30. Defendant Adreani only showed Doe a picture of Mr. Montalvo, and did not show Doe pictures of other individuals, including Mr. Montalvo's lookalike brother, Reinaldo ("Ray") Montalvo.

31. Ray Montalvo has a criminal history, including arrests by the Chicago Police Department for drug-related (specifically, cocaine) and weapons-related offenses.

32. Defendant Adreani did not confirm the apartment number of Mr. Montalvo either through the records of the Chicago Police Department or through publicly available records of utilities registered to Mr. Montalvo.

33. Defendant Adreani did not compare Mr. Montalvo's purported apartment number with a contradictory address listed in a May 2008 Chicago Police Department search warrant (the "May Warrant") for Mr. Montalvo's purported residence, information also readily available through the records of the Chicago Police Department.

34. The May Warrant also listed as its subject, "MONTALVO, Richard… aka 'Ray.'"

35. Contrary to Doe's statement and Adreani's affidavit based upon that statement, Mr. Montalvo and his daughter resided in the second floor apartment of the building.

36. In this regard, although Defendant Adreani had information available to him which he could have used to verify, test or otherwise attempt to corroborate his informant's representations, he failed to do so and the November Warrant was issued.

37. Defendant Adreani neither described nor asserted the veracity of informant Doe in the affidavit he submitted with his complaint for search warrant.

38. When executing the November Warrant on November 3, 2008, the Executing Officers did not find drugs or a gun after searching the attic, Mr. Montalvo's second floor apartment and the third floor apartment at 1642 W. LeMoyne.

39. The Executing Officers found only random ammunition in the building's attic, which is a common space accessible by any resident of the apartment building, and other non-residents with access the common spaces in the building.

40. After finding the random ammunition in the common attic, and notwithstanding the fact that the Executing Officers did not locate a gun, let alone a gun matching the random ammunition found in the common attic space, the Executing Officers handcuffed and arrested Mr. Montalvo in front of his 7-year-old daughter.

41. When Mr. Montalvo's daughter asked what was happening and cried in the hallway of the apartment building, the Executing Officers yelled at Mr. Montalvo's daughter, telling her to be quiet.

42. Mr. Montalvo was later charged with unlawful possession of ammunition.

43. On October 21, 2009, all charges against Mr. Montalvo incident to the November 3, 2008 arrest were dismissed.

44. Prior to the dismissal of the charges, Mr. Montalvo was incarcerated at the Cook County Jail and the Stateville Correctional Facility awaiting trial for 282 days from the date of

his arrest until the dismissal of the matter. He would not have been incarcerated in the absence of the Defendants' execution of the November Warrant which, as alleged herein, was improper in the first instance.

45. While incarcerated, Mr. Montalvo was unable to earn wages and his efforts to build his moving business suffered considerably as a result.

46. Mr. Montalvo lost crew members he had hired to work for his business and also lost access to supplies obtained to use with his business.

47. Mr. Montalvo's daughter was uprooted from her home, and forced to live with a relative from the time of his arrest until the eventual dismissal of the charges against him.

48. Mr. Montalvo's daughter suffered depression and behavioral problems as a result of his arrest and incarceration.

49. Mr. Montalvo's daughter continues to suffer both emotionally and psychologically as a result of Mr. Montalvo's arrest and incarceration.

50. Mr. Montalvo's daughter now requires medication for emotional and psychological issues related to his arrest and incarceration.

## **COUNT I**
**(42 U.S.C. §1983: Invalid Search Warrant Against The Chicago Police Officers in Their Individual Capacity)**

51. Plaintiff Montalvo hereby incorporates and realleges paragraphs 1-50, as and for paragraph 51 as though fully set forth herein.

52. Defendant Adreani acted under color of state law when he secured a search warrant for Mr. Montalvo from the Circuit Court of Cook County.

53. Defendant Adreani, with a reckless disregard for the truth, made false statements in the affidavit he submitted with his complaint for search warrant.

54. Specifically, Defendant Adreani testified in his affidavit that Mr. Montalvo resided in the third floor unit at 1642 W. Lemoyne, despite the fact that a contradictory search warrant previously issued for Mr. Montalvo was based upon an affidavit and complaint that listed his residence as another unit in the building.

55. Had Defendant Adreani reviewed the Chicago Police Department's records, he would have learned of the false statements in the affidavit he submitted with his complaint for search warrant. Had Defendant Adreani reviewed the Chicago Police Department's records, he also would have determined that the information provided to him by the confidential informant was incorrect, and that additional investigation was warranted before seeking a search warrant on the same day.

56. Defendant Adreani acted with a reckless disregard for the truth when he failed to establish Doe's veracity, the truthfulness and/or accuracy of the information provided by Doe on the same day Doe had used cocaine, or describe or assert that veracity in his affidavit submitted in support of the complaint for search warrant.

57. Defendant Adreani acted with a reckless disregard for the truth when he failed to check the facts asserted by Doe and in Adreani's affidavit and complaint for search warrant, against the records of the Chicago Police Department, which contradicted Doe's statement.

58. The statements of the informant, which were described by and included in Defendant Adreani's affidavit, were necessary to the Court's determination on November 3, 2008 that probable cause existed to issue the search warrant.

59. In the absence of Defendant Adreani's affidavit, the November Warrant would not have been issued.

60. A reasonable police officer in Defendant Adreani's position would have known that the affidavit was so plainly deficient that it failed to truthfully establish probable cause and that he should not have applied for the search warrant.

61. The Chicago Police Officers' conduct in obtaining the unlawful warrant and incident to the unlawful warrant violated Mr. Montalvo's constitutional right to be free from unreasonable searches and seizures.

62. As a result of the Chicago Police Officers' actions, Mr. Montalvo was wrongfully arrested, incarcerated for 282 days, and suffered various injuries.

63. As a direct and proximate cause of the Chicago Police Officers' conduct, Mr. Montalvo suffered violations of his constitutional rights, monetary damages, emotional anxiety, fear, pain and suffering.

WHEREFORE, Plaintiff Richard Montalvo requests that this Court enter judgment in his favor and against Defendants Adreani, Travlos, Liboy, Perez, Marin, Colindres, Zullo, Martinez, Olivares, Lopez, Ronan, Via, and Loughran, and:

(1) Award compensatory damages to Plaintiff Montalvo against the Chicago Police Officers;

(2) Award punitive damages to Plaintiff Montalvo against the Chicago Police Officers;

(3) Award reasonable attorneys' fees and costs to Plaintiff Montalvo; and

(4) Award such other and further relief as this Court may deem appropriate.

## COUNT II
### (42 U.S.C. §1983: *Monell* Claim Against City of Chicago)

64. Plaintiff hereby incorporates and realleges paragraphs 1-63, as and for paragraph 64 as though fully set forth herein.

65. The City of Chicago developed and maintained policies, customs and/or practices exhibiting and/or permitting deliberate indifference to the constitutional rights of persons in the City of Chicago that caused the violation of Mr. Montalvo's rights.

66. It was the policy, custom, and/or practice of the City of Chicago, as promulgated, tolerated, permitted, enforced and disseminated by the City of Chicago, the Chicago Police Department, the Internal Police Review Authority, and the Internal Affairs Division, which are charged with ensuring compliance with the Constitution of the United States, to tolerate, permit and promulgate the following customs, polices and practices that caused the constitutional violations alleged herein, including but not limited to:

   a. The failure of police officers to thoroughly investigate and corroborate the statements of anonymous informants when such statements are used in furtherance of securing and/or obtaining a search warrant;

   b. The failure of police officers to conduct basic research into the actual identities and physical addresses of search warrant targets; and

   c. The failure to discipline police officers who pursue and execute warrants that do not meet the minimum standards of probable cause.

67. As a result of the above-described policies, customs and/or practices, police officers of the City of Chicago, including Defendant Adreani, believed that their actions would be tolerated.

68. The above-described policies, customs and/or practices demonstrated a deliberate indifference on the part of policymakers of the City of Chicago to the constitutional rights of persons within the City of Chicago and were the cause of the violations of Mr. Montalvo's rights as alleged herein.

69. As a direct and proximate cause of the above-described actions of the City of Chicago, Mr. Montalvo was injured, including injuries resulting from the above-detailed constitutional violations, monetary damages, emotional anxiety, fear, pain and suffering.

WHEREFORE, Plaintiff Richard Montalvo requests that this Court enter judgment in his favor and against the Defendant City of Chicago, and:

    (1)    Award compensatory damages to Plaintiff Montalvo against Defendant City of Chicago;

    (2)    Award reasonable attorneys' fees and costs to Plaintiff Montalvo; and

    (3)    Award such other and further relief as this Court may deem appropriate.

## JURY DEMAND

Plaintiff Richard Montalvo hereby demands a trial by jury on all counts alleged herein.

Dated: March 2, 2011                Respectfully submitted,

                                        Richard Montalvo


                                        By: /s/ Christopher D. Mickus
                                              One of His Attorneys

Christopher D. Mickus (6270275)
Sarah. G. Malia (6279119)
NEAL, GERBER & EISENBERG LLP
Two N. LaSalle Street, Suite 1700
Chicago, Illinois 60602
Telephone: (312) 269-8000
Facsimile: (312) 269-1747

NGEDOCS: 008000.0380:1771195.5