# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **RICHARD MONTALVO,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.  10 C 7044** |
| **v.** | ) | |
| | ) | |
| **JOHN A. ADREANI and THE CITY** | ) | **Magistrate Judge Geraldine Soat Brown** |
| **OF CHICAGO,** | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion for Summary Judgment.  (Defs.' Mot.) [Dkt 106].
Plaintiff Richard Montalvo has filed his opposition to the motion (Pl.'s Opp'n) [dkt 112] and
defendants have filed their reply (Defs.' Reply) [dkt 114].   For the reasons set forth below,
defendants' motion is granted.

## JURISDICTION

Montalvo's claims against the defendants arise under 42 U.S.C. § 1983 and the Fourth and
Fourteenth Amendments to the Constitution.  (Am. Compl.) [Dkt 29.]  The parties consented to the
exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).  [Dkt
103.]

## BACKGROUND

On November 3, 2008, Chicago police officer John Adreani applied for and obtained a search

1

warrant for Richard Montalvo and for the third floor apartment and attached attic of 1642 W.

LeMoyne in Chicago (the "LeMoyne Building"). (Pl.'s LR Resp., Ex. 1.) [Dkt 113.][1] The warrant

application was based on a complaint Adreani had prepared recounting his interaction with a

confidential informant, "Doe." (*Id*.) According to the warrant complaint, Doe had gone to the third

floor apartment of the LeMoyne Building early that morning and bought $10 worth of cocaine from

Montalvo. (*Id*.) Doe observed Montalvo take the cocaine from a larger quantity on a table near a

couch in the apartment. (*Id*.) Montalvo then led Doe through the residence to an enclosed rear porch

and then up to the attic. (*Id*.) In the attic, Montalvo took a chrome-colored .45 caliber automatic

handgun from behind some power tools and told Doe it was loaded. (*Id*.) Doe told Montalvo that

he did not "mess with guns." (*Id*.) Montalvo then put the handgun back behind the power tools.

(*Id*.)

According to the warrant complaint, Doe had been using cocaine for at least five years, and

he had purchased cocaine from Montalvo several times during the past year. (*Id*.) Doe described

the cocaine he said he purchased from Montalvo that morning as having "the same euphoric high

sensation it has [had] in the past." (*Id*.)

Upon obtaining the information from Doe, Adreani took certain steps to verify Doe's story.

(*Id*.) First, he showed Doe a photo of Montalvo that he had obtained from "Department resources,"

and Doe confirmed from the photo that Montalvo had sold him cocaine. (*Id*. ¶¶ 17, 41, 42 and Ex.

1.) Then he drove with Doe to the LeMoyne Building, which Doe positively identified as the place

---

[1] Montalvo's Local Rule response and statement of additional facts were filed as one
document but are cited separately for clarity. Also for ease of reference, citations to Adreani's
complaint for a search warrant and the resulting warrant are only to the version attached to
Montalvo's Local Rule response although the parties each submitted identical copies. (*See* Defs.'
LR Stmt, Ex. 6 [dkt 108]; Pl.'s LR Resp., Ex. 1.)

in which he had bought the cocaine and seen the gun. (*Id.* ¶ 43 and Ex. 1.) Doe pointed to a planter in a window and confirmed that it was the correct location. (*Id.* ¶ 43.) Finally, Adreani checked Montalvo's driver's license, and determined that Montalvo did not possess a valid "FOID card" (firearms owners identification card) and verified that he is a convicted felon. (*Id.* ¶ 47 and Ex. 1.)

Adreani was familiar with Doe before his tip about Montalvo. Adreani had had positive experiences with Doe in the past. (*Id.* ¶ 10.) He testified at his deposition that he had probably talked with Doe about 10 times previously, and that Doe had given him information that led both to positive search warrants and arrests in the past. (Defs.' LR Stmt., Ex. 3, Dep. John Adreani at 78, 133.) Adreani also testified that at the time of his search warrant application, he was already familiar with the LeMoyne Building because it was "a known location where drug users go in the basement . . . . They were . . . selling narcotics out of the basement . . . or out of the whole building actually. . . . There was always activity throughout that whole building." (*Id.* at 62.) Adreani had previously interacted with Montalvo's brother "Beaver" whom he described as "a known drug dealer," and he believed that another Montalvo family member was living in the basement apartment and was also involved in with drugs. (*Id.* at 63-64.) Adreani testified that he was also familiar with Richard Montalvo at the time although he could not recall why. (*Id*. at 97-98.) Adreani believed the LeMoyne Building to be a Montalvo family building, and he did not know at the time which Montalvo family member lived in which apartment. (Pl.'s LR Resp. ¶ 30; Adreani Dep. at 67.) Doe specifically confirmed however that he had purchased cocaine in the third floor apartment from Beaver's brother Richard Montalvo and not another Montalvo family member. (Pl.'s LR Resp. ¶¶ 14, 15, 42; Adreani Dep. at 81-82, 96.)

Upon Doe's information and his investigation, Adreani then prepared the complaint for a

3

search warrant, and submitted it to his watch commander and an assistant state's attorney for review. (Pl.'s LR Resp. ¶¶ 54, 55.) Each approved it. (*Id*. ¶¶ 54, 56 and Ex. 1; Adreani Dep. at 138.) Adreani next searched for a judge to consider the complaint, and when he reached Judge Nicholas Ford, he arranged to bring Doe to him. (Pl.'s LR Resp. ¶ 60.) The three met briefly that evening in an alley near Judge Ford's home. (*Id*. ¶¶ 63-65; Adreani Dep. at 145-47.) Adreani testified that he could not recall much of the exchange with Judge Ford other than that the judge had sworn both Doe and Adreani to tell the truth. (Adreani Dep. at 146-47.) It is undisputed that Judge Ford asked Doe questions. (Pl.'s LR Resp. ¶ 65.)[2] The warrant complaint is signed by "J. Doe" and Adreani on all three pages. (*Id.*, Ex. 1.) Judge Ford acknowledged that the warrant complaint was "subscribed and sworn before [him]." (*Id.*) The judge signed the warrant, and Adreani and several other police officers executed it that evening. (*Id.* ¶¶ 66, 68 and Ex. 1.)

Upon execution of the warrant, the officers found Montalvo in the second floor apartment which they also searched. (Pl.'s LR Resp. at 15 n. 3; Defs.' Resp. Pl.'s Addl. Facts ¶ 41 [dkt 115].) The officers also learned that the attic was not attached to the third floor apartment but was a separate space secured with a burglar gate and bars and a padlock. (Pl.'s LR Resp. ¶¶ 69, 70.) It is undisputed that Montalvo, his brother Wilfredo and his mother Herminia each have keys to the attic. (*Id*. ¶¶ 70-72.) The officers used Montalvo's keys to get into the attic. (*Id*. ¶ 73.) The search of Montalvo, the second and third floor apartments and attic did not uncover any drugs or guns. (*Id.* ¶ 74.) The officers did however find loose ammunition in the attic, for which Montalvo was charged with unlawful possession. (*Id.* ¶¶ 75, 76.) For reasons not clear on the record, the charges against

---

[2] Doe's testimony to Judge Ford was not recorded and Judge Ford was not deposed, so there is no record of what Doe told Judge Ford.

4

Montalvo were later dismissed.  (*Id.* ¶ 79.)

Montalvo filed the present action against Adreani, the City of Chicago, and several others individual officers for their actions in conjunction with the November 3, 2008 warrant.  (Am. Compl.)  Several claims and defendants were dismissed, leaving only Montalvo's claim under 42 U.S.C. § 1983 against Adreani for unlawful search resulting in his arrest and incarceration, and his claim under 42 U.S.C. § 1983 against the City of Chicago alleging that it had developed and maintained unconstitutional policies, customs and/or practices in violation of *Monell v. Dept. of Social Servs. of City of N.Y*, 436 U.S. 658 (1978).  [Dkt 74.]


## THE PRESENT MOTION

Defendants move for summary judgment on Montalvo's remaining claims.  According to defendants, probable cause existed for the search warrant based on Doe's report to Adreani and Adreani's objectively reasonable corroboration of Doe's information.  (Defs.' Mem. at 3-7.) [Dkt 107.]  Defendants argue that despite Adreani's general knowledge of Montalvo and the LeMoyne Building, Adreani nevertheless took several important steps to sufficiently verify Doe's information. (*Id*. at 4; Defs.' Reply at 2-7 [dkt 114].)  Because probable cause was established, defendants argue, neither Montalvo's unreasonable search claim nor his related *Monell* claim can survive summary judgment.  (Defs.' Mem. at 7-8; Defs.' Reply at 11-12.)  Moreover, defendants contend, qualified immunity shields Adreani because he took every step that could reasonably be expected of him, including reasonably relying on the judge's probable cause determination with regard to the warrant at issue here.  (Defs.' Mem. at 7-8; Defs.' Reply at 11-12.)

Montalvo opposes the motion, arguing there was no probable cause for the search warrant

5

to issue, or at least, that there is a question of fact as to whether probable cause existed. (Pl.'s Opp'n at 4-8.) According to Montalvo, Adreani assumed that Doe was telling the truth about Montalvo and as a result, he failed to conduct a meaningful independent investigation of Doe's statements. (*Id*. at 7.) Montalvo argues that, had Adreani asked more questions of Doe or taken other investigative steps, he would have discovered that Montalvo did not in fact live in the third floor apartment, and he would have otherwise questioned the accuracy of Doe's account. (*Id*. at 6-8.) Making matters worse, Montalvo says, Adreani failed to disclose material information to the warrant issuing judge and therefore prevented an accurate determination of the facts. (*Id*. at 10-11.) Had Adreani disclosed that Doe was sniffing a lot, that Montalvo's brother was known by Adreani to be a drug dealer and that the LeMoyne Building was a family building with various Montalvo family members living in each of its units, Montalvo argues, the warrant would never have issued in the first place. (*Id.*)

## LEGAL STANDARD

A party may move for summary judgment on a claim or defense, or part of a claim or defense. Fed. R. Civ. P. 56(a). Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* To oppose a motion for summary judgment successfully, the responding party may not simply rest on its pleadings, but rather must submit evidentiary materials showing that a material fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1). A genuine dispute of material fact exists when there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). It is not the duty of the court to scour

6

the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving

party bears the responsibility of identifying applicable evidence. *Bombard v. Ft. Wayne Newspapers,*

*Inc.*, 92 F.3d 560, 562 (7th Cir. 1996). In determining whether a genuine dispute of material fact

exists, the court construes all facts and draws all reasonable and justifiable inferences in favor of the

nonmoving party. *Anderson*, 477 U.S. at 255. It is not for the court at summary judgment to weigh

evidence or determine the credibility of a witness' testimony. *O'Leary v. Accretive Health, Inc.*, 657

F.3d 623, 630 (7th Cir. 2011).

Under Rule 56.1 of the Local Rules for the Northern District of Illinois, the party opposing

a motion for summary judgment must provide a response that either admits or denies each of the

moving party's statements of fact, and must support any denials with specifically citation to

affidavits, parts of the record or other supporting evidence. N.D. Ill. Loc. R. 56.1(b)(3). Where the

opposing party fails to identify such materials, the moving party's allegations, where properly

supported, will be deemed admitted. *Id.*[3] Local Rule 56.1 "serves an important function by ensuring

that the proposed findings of fact are in a form that permits the district court to analyze the

admissible evidence supporting particular factual propositions and determine precisely what facts,

if any, are material and disputed." *Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626, 630 (7th

Cir. 2010).

---

[3] Montalvo responded to several of defendants' statements of fact with neither an admission nor a supported denial, but rather an acknowledgment that defendants' cited source supported the asserted fact. (*See, e.g.,* Pl.'s LR Resp. ¶¶ 10, 12, 15-17.) Because Montalvo does not dispute the statements with supported denials, they are deemed admitted. *See* N. D. Ill. Loc. R. 56.1(b)(3)(C).

## DISCUSSION

"Section 1983 allows citizens who believe their constitutional rights have been violated by public officials to sue those officials in their individual capacities." *Fleming v. Livingston Co.*, 674 F.3d 874, 878 (7th Cir. 2012). To succeed on a claim under Section 1983, a plaintiff must show that a person acting under color of state law deprived him of a right, privilege, or immunity secured either by the Constitution or federal law. *See, e.g.*, *Lugar v. Edmondson Oil Co.* 457 U.S. 922, 930 (1982). The central issue raised by the motion is whether a genuine dispute of material fact exists to support Montalvo's claim that his Fourth Amendment rights were violated. (Defs.' Mot. ¶ 2.)

## I.      Probable Cause

"Probable cause for a search warrant exists where the known facts and circumstances are sufficient for a reasonably prudent person to form the belief that contraband or evidence of a crime will be found." *U.S. v. Lake*, 500 F.3d 629, 632 (7th Cir. 2007)*; accord U.S. v. Dismuke*, 593 F.3d 582, 586-87 (7th Cir. 2010). Great deference is afforded to a warrant-issuing judge's probable cause determination. *Illinois v. Gates*, 462 U.S. 213, 236 (1983); *Dismuke*, 593 F.3d at 586; *U.S. v. Koerth*, 312 F.3d 862, 865 (7th Cir. 2000). "Reflecting [the] preference for the warrant process, the traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the [judge] had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Gates*, 462 U.S. at 236 (internal quotations omitted); *accord Junkert v. Massey*, 610 F.3d 364, 367-68 (7th Cir. 2010); *Dismuke*, 593 F.3d at 586.

8

## A.   Adreani's investigation was reasonable.

Montalvo claims that Adreani failed to perform a reasonable investigation because he did not do enough to corroborate Doe's story before applying for a search warrant.   He emphasizes the fact that Doe incorrectly told Adreani that Montalvo lived in the third floor apartment of the LeMoyne Building to demonstrate both what he says is Doe's unreliability and Adreani's failure to sufficiently investigate. (Pl.'s Opp'n at 5-7.) Montalvo's claim fails under established Seventh Circuit authority.

"Where . . . 'the affidavit relies on information supplied by an informant, the totality-of-the-circumstances inquiry generally focuses on the informant's reliability, veracity, and basis of knowledge.'" *Junkert*, 610 F.3d at 368 (quoting *Dismuke*, 593 F.3d at 586).   "Several factors inform the analysis, including: (1) the degree of police corroboration of the informant's information; (2) whether the information is based on the informant's personal observations; (3) the amount of detail provided by the informant; (4) the interval of time between the events reported by the informant and the warrant application; and (5) whether the informant personally appeared before the warrant-issuing judge." *Junkert,* 610 F.3d at 368 (citing *Koerth,* 312 F.3d at 866); *accord Dismuke*, 593 F.3d at 587.   "A deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." *Dismuke*, 593 F.3d at 587 (quoting *U.S. v. Brack*, 188 F.3d 748, 756 (7th Cir. 1999)).   The level of corroboration of the details of an informant's tip by independent police work is important to the analysis. *Gates*, 462 U.S. at 241.   An officer seeking a search warrant relying on information provided by a confidential informant is obliged to take reasonable steps to confirm the information before using it in an affidavit in support of the warrant. *Jacobs v. City of Chicago*, 215 F.3d 758, 768 n. 4 (7th Cir. 2000).

The circumstances of Doe's tip to Adreani suggest its strength under *Junkert*, 610 F.3d at

9

367-68, and the record demonstrates without material dispute Adreani's reasonable steps to investigate and corroborate Doe's account. Doe was not a stranger to Adreani; rather, Adreani had obtained several positive tips from Doe in the past. (Pl.'s LR Resp. ¶ 10.) Adreani testified that Doe had given him information forming the basis of about five or six previous search warrants, and that the information had led to arrest warrants 80% of the time, and to convictions 50% of the time. (Adreani Dep. at 134.) Doe identified Montalvo by name when he provided his information to Adreani, and Doe explained his personal and year-long knowledge of Montalvo.[4] (Pl.'s LR Resp. ¶ 14 and Ex. 1.) Despite this context, Adreani nevertheless took steps to corroborate Doe's story and those steps lent further credence to Doe's account. *See U.S. v. Robinson*, 546 F.3d 884, 888 (7th Cir. 2008) (noting where police verified suspect's criminal record, as well as informant's identification of suspect and his residence, they had "verified [the informant's] information as much as possible"). Adreani showed Doe a picture of Montalvo, and Doe confirmed it as the man who had sold Doe drugs and showed him a gun. (Pl.'s LR Resp. ¶¶ 41, 42.) Adreani also drove Doe past the LeMoyne Building and Doe confirmed it as the location at which he had made the purchase and seen the gun, even pointing to a specific planter in the window as confirmation. (*Id*. ¶ 43 and Ex. 1; Adreani Dep. at 104.) Adreani further checked Montalvo's driver's license, and although it indicated no apartment number, it confirmed Montalvo's street address at the LeMoyne Building which was consistent with what Doe had said. (Pl.'s LR Resp. ¶ 20.) Adreani also verified Montalvo's criminal history and the fact that he was not authorized to possess a firearm. (Pl's LR Resp., Ex. 1)

---

[4] Montalvo argues that evidence of Doe's statements should be disregarded as hearsay, but Doe's statements are not offered in this action for their truth. It is undisputed that Doe's statements as memorialized in Adreani's complaint for a search warrant were presented to the warrant-issuing judge. The issue here is whether, given those statements, and Adreani's undisputed actions to corroborate them, probable cause existed for the search warrant to issue.

Further, the information Doe provided was timely; Doe's tip concerned a drug sale Doe said had taken place that same day. Likewise, the basis of Doe's knowledge was immediate and personal. His report was not about information that he claimed to have obtained from a third party. Rather, Doe provided a detailed account of a drug transaction he claimed to have personally completed that day. "First-hand observations by [an informant] support a finding of reliability. *U.S. v. Lloyd*, 71 F.3d 1256, 1263 (7th Cir. 1995) (quoting *U.S. v. Buckley*, 4 F.3d 552, 555-56 (7th Cir. 1993) (internal modification omitted)). The level of detail Doe provided, including the location of the cocaine and the gun as well as the specific color and type of gun he had seen further enhanced Doe's reliability. *Id*. Notably, Doe was willing to, and actually did, appear before the warrant issuing judge and submit to the judge's questioning. His presence before the judge further "adds to the reliability of the information used to obtain the warrant, because it provides the judge with the opportunity to 'assess the informant's credibility and allay any concerns he might have had about the veracity of the informant's statements.'" *Id*. (quoting *U.S. v. Causey*, 9 F.3d 1341, 1343 (7th Cir. 1993)). Under each of the *Junkert* factors, then, Doe's tip, supported by Adreani's investigation provided a substantial basis for Judge Ford's conclusion that a search would uncover evidence of wrongdoing.

Despite the actions Adreani's took to corroborate Doe's account, Montalvo argues that his efforts were not reasonable because Adreani did not ask enough questions of Doe or otherwise sufficiently confirm that Doe's statements were accurate. (Pl.'s Opp'n at 2, 5-8.)[5] Had he done so,

---

[5] Montalvo argues that Chicago Police Department internal policies required Adreani to conduct an independent investigation to verify and corroborate Doe's statements. (*Id*. at 2.) What the Police Department requires is irrelevant to the constitutional inquiry of whether Adreani's actions were objectively reasonable. *See Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006).

Montalvo says, Adreani would have discovered errors in Doe's story or at least discovered evidence that would have caused him to question its accuracy. (Pl.'s Opp'n at 7-8.) According to Montalvo, Adreani was required to do more given his unique knowledge that Montalvo's brother has a drug-dealing history and given the fact that another search warrant had been issued by the City of Chicago only five months earlier for "Richard a.k.a. Ray" at a different apartment in the LeMoyne Building. (*Id*. at 6-7; Pl.'s LR Resp., Ex. 2.)

It is undisputed that Adreani did not run a public utilities search in efforts to verify Montalvo's apartment. (Defs.' Resp. Pl.'s Addl. Facts ¶ 28.) Adreani also testified that he did not check for any earlier warrants. (Adreani Dep. at 70.) The relevant inquiry here, however, is not whether Adreani could have perfected his corroboration, but rather, whether what he did was reasonable given the circumstances. *See Jacobs*, 215 F.3d at 768 n. 4. The fact there were "additional things which could have been done but were not does not in any way detract from what was done." *U.S. v. Jones*, 208 F.3d 603, 607 (7th Cir. 2000).[6] Given all of the circumstances, it cannot be said that Adreani's decision not to run a utilities search or check for earlier warrants renders his investigation unreasonable.

Montalvo argues, based on *U.S. v. Hinton*, 219 F.2d 324 (7th Cir. 1955), that Adreani did not sufficiently verify Montalvo's apartment number. That argument confuses the Fourth Amendment's warrant particularity requirement with the reasonableness requirement against which Adreani's investigation must be measured. The warrant here particularly identified the place to be searched;

---

[6] Montalvo's argument notwithstanding, it is likewise irrelevant that Adreani could not recall at his deposition the questions he asked of Doe at the time of his tip about Montalvo. The information Doe provided and the steps that Adreani took to verify Doe's tip were set forth in the complaint and presented to the warrant-issuing judge.

it simply turned out to be not to be Montalvo's, which was located on the second floor rather than the third. Where the officer conducts a reasonable investigation in support of the warrant application, a factual mistake discovered after the issuance will not in itself invalidate an otherwise valid warrant. *Maryland v. Garrison*, 480 U.S. 79, 87-88 (1987). Probable cause is not evaluated with the benefit of "hindsight, based on what a search does or does not turn up." *Florida v. Harris*, ___ U.S. ___, 2013 WL 598440 at * 7 (Feb. 19, 2013); *accord Maryland v. Garrison*, 480 U.S. at 85. Rather, the validity of the warrant is "judged on the basis of the information available at the time the warrant was issued." *Lake*, 500 F.3d at 633; *accord Guzman v. City of Chicago*, 565 F.3d 393, 396 (7th Cir. 2009).

The Seventh Circuit recently affirmed the probable cause determination and resulting search warrant in a case with similar facts to those presented here. *See Dismuke*, 593 F.3d 582. In *Dismuke*, a confidential informant had reported that within the previous week he had seen a shotgun and two pistols in the home of convicted felon Dismuke whose address the informant had specifically provided. *Id*. The investigating officer verified that the informant could distinguish between types of firearms and confirmed Dismuke's identity by showing the informant a photo. *Id*. at 585. The officer further corroborated the informant's tip by identifying Dismuke's prior felony convictions, confirming his address from a driver's license database, and verifying that a vehicle parked behind the addresses was registered to Dismuke. *Id*. Upon this investigation, the officer sought and obtained a search warrant for Dismuke's home.

While noting that the case was a "close" one, the Seventh Circuit rejected Dismuke's challenge to the probable cause determination. On the one hand, the court noted, the informant's knowledge had been current and based on personal observation, and the specific description of the

13

guns had provided some indicia of reliability, but on the other hand it observed, the remaining facts were not particularly well developed. *Id*. at 587. The officer's verification of the "innocent facts" of Dismuke's identity and the informant's correct identification of Dismuke's residence was important, "but [did] not directly bolster the informant's claim that Dismuke illegally possessed guns at his home." *Id.* at 587-88. Still, considering the totality of the circumstances and the great deference due to the issuing judge, the court upheld the probable cause determination. *Id*. at 588.

The search warrant application in this case is substantially stronger than the one sustained in *Dismuke*.[7] First, Doe's account provides several details the likes of which were missing in *Dismuke*: Doe explained why he was in Montalvo's home and his year long relationship with Montalvo, and he described with particularity the drug transaction he says took place there that same day and the specific location within the home where he claimed to have seen the gun which he described by color and model. (Pl.'s LR Resp., Ex. 1.) Both the level of detail and the recentness of his reported purchase made it reasonable for the police to rely on his statements. *Lake*, 500 F.3d at 633. Similarly, Doe's admission that he had purchased cocaine from Montalvo is a statement against Doe's penal interest and is therefore a "weighty factor in establishing probable cause." *Id*.; *Robinson*, 546 F.3d at 888-89.

Further, unlike in *Dismuke*, the informant here was brought before the issuing judge, and he was questioned by him. (Pl.'s LR Resp. ¶¶ 64, 65 and Ex. 1.) When the informant "accompanies

---

[7] Montalvo attempted at oral argument to distinguish *Dismuke* on the basis that the officer in that case had verified the informant's report of Dismuke's single family home, whereas Adreani's check of Montalvo's license did not confirm his specific apartment. This argument misses the mark. Adreani's investigation need not verify each of Doe's provided details to be sufficient; rather, the investigation need only be reasonable in the context of all of the circumstances presented. *See Dismuke*, 593 F.3d at 588; *Jacobs*, 215 F.3d at 768.

14

the officer and is available to give testimony before the judge issuing the warrant, his presence adds to the reliability of the information used in the warrant." *Lloyd*, 71 F.3d at 1263; *accord Lake*, 500 F.3d at 633; *Koerth*, 312 F.3d at 866 (noting informant's personal appearance before warrant-issuing judge "allow[ed] judge to evaluate the informant's knowledge, demeanor, and sincerity"). Under a totality of the circumstances, and giving due deference to the issuing judge who not only reviewed Adreani's affidavit but also questioned Doe about it, the evidence before the warrant-issuing judge was sufficient to support his probable cause determination.

**B.    Adreani did not fail to disclose material information to the warrant-issuing judge.**

Montalvo further argues that Adreani withheld material facts from the warrant-issuing judge. (Pl.'s Opp'n at 2, 7-8.) According to Montalvo, Adreani failed to disclose the fact that Doe had ingested the cocaine he said he purchased from Montalvo that day and he was acting as if he were under the influence of drugs when he talked with Adreani. (*Id.*) Montalvo further argues that given Adreani's particular knowledge of the LeMoyne Building as a family building and the fact that others in the Montalvo family were known to be involved with drugs, Adreani had unique reasons to doubt the accuracy of Doe's story or to at least question Doe's motivation, but Adreani did not disclose those considerations in his warrant application. (*Id.* at 7-8.)

A warrant request violates the Fourth Amendment where it is shown that the officer who sought the warrant intentionally or recklessly withheld material facts from the warrant-issuing judge. *Whitlock v. Brown*, 596 F.3d 406, 410-11 (7th Cir. 2010). Reckless disregard for the truth may be shown by demonstrating that the officer entertained serious doubts as to the truth of the statements

15

or failed to disclose facts he or she knew would negate probable cause. *Betker v. Gomez*, 692 F.3d 854, 860 (7th Cir. 2012). "The materiality of an omitted or misrepresented fact depends on its relative importance to the evaluation of probable cause; an omitted fact is material if its inclusion would have negated probable cause." *Whitlock*, 596 F.3d at 411. "One way of approaching the materiality question is to ask 'whether a hypothetical affidavit including the omitted material would still have established probable cause.'" *Id.* (quoting *Robinson*, 546 F.3d at 888). In making this determination, it must be remembered that "probable cause is a common-sense inquiry requiring only a probability of criminal activity." *Id.*

In this case, however, the record establishes that Adreani did not withhold material facts from the warrant issuing judge. First, the warrant application includes not only Doe's admission that he had been using cocaine for at least five years and had purchased it from Montalvo on several occasions during the past year, but also that the cocaine he had purchased that day had given him the "same euphoric high sensation" that it had in the past. (Pl.'s LR Resp., Ex. 1.) From the face of the warrant application, it is clear that the judge was informed both that Doe had taken drugs in the past and that he had taken the drugs he said he had purchased from Montalvo that day. Moreover, although Adreani acknowledged at his deposition that Doe "could have been" under the influence of drugs when they spoke, he did not testify that Doe was so impaired. (Adreani Dep. at 86-87.) Instead, he testified only that Doe was sniffing a lot, a trait Adreani associates with cocaine use. (*Id.* at 87.) Finally, if there were any question of Doe's competence to provide the tip, the warrant-issuing judge had the opportunity to address it when he interviewed Doe. *See Lloyd*, 71 F.3d at 1263.

Similarly, Montalvo's complaint that Adreani did not question Doe regarding his motive for

16

providing information is unavailing. The informant's motive for providing information is not "necessarily essential to a probable cause determination, especially when the informant is sufficiently reliable that probable cause would have been found even if the motive were included." *U.S. v. Taylor*, 471 F.3d 832, 840 (7th Cir. 2007). Not only is there no evidence in the record to suggest any motive that would affect Doe's credibility, but the record is undisputed that Adreani had previously obtained credible information from Doe before (Pl.'s LR Resp. ¶ 10), and Adreani testified that he had not questioned Doe about his motive because of his established relationship with him. (Adreani Dep. at 162.)

Finally, there is no evidence to suggest that Adreani's general knowledge of the Montalvo family or the LeMoyne Building would be material to a probable cause determination or even that it was relevant to Adreani's efforts to investigate. Regardless of what Adreani knew about other Montalvo family members, Doe reported that he had bought drugs from Richard Montalvo by name, and that he had been doing so for a year. The fact that Adreani believed that other Montalvo family members might also have been involved in the sale of drugs does not necessarily create any reason to doubt to Doe's story. Indeed, Adreani's general knowledge of the Montalvo family and drug activity at the LeMoyne Building could have lent more credibility to Doe's account of what had transpired there. In any event, even if Adreani had included information in the warrant about Montalvo's family history with drugs, a finding of probable cause would nevertheless still have been supported.

## II.    Qualified Immunity

Montalvo argues that Adreani's belief in probable cause was not objectively reasonable

17

because he acknowledged assuming Doe's statements to be true and because he did not take certain steps other officers would have taken to corroborate them. (Pl.'s Opp'n at 9-11.) Because probable cause was established at the time of the warrant's issuance, no constitutional violation occurred and a decision on qualified immunity is not necessary for the resolution of this case. Even if there were a genuine dispute of material fact as to the existence of probable cause, however, summary judgment would nevertheless be proper since Adreani would at least be entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *accord Jacobs*, 215 F.3d at 766. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 132 S.Ct 1235, 1244 (2012) (internal quotation and citation omitted). Whether an official is shielded by qualified immunity "generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Id*. at 1245 (internal quotation omitted). A plaintiff seeking to defeat a claim of qualified immunity must establish: first, that the "plaintiff has alleged facts that, if proved, would establish a constitutional violation"; and second, that a "reasonable officer have known his actions were unconstitutional in light of clearly established law." *Whitlock*, 596 F.3d at 410 (citing *Saucier v. Katz*, 533 U.S. 194 (2001)).

"Where the alleged Fourth Amendment violation involves a search . . . pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted

18

in an objectively reasonable manner or, . . . in 'objective good faith.'" *Messerschmidt*, 132 U.S. at

1245 (quoting *U.S. v. Leon*, 468 U.S. 897, 922-23 (1984)). Obtaining a judge's approval does not

automatically render an officer's conduct reasonable, but it is "certainly pertinent in assessing

whether [the officer] could have held a reasonable belief that the warrant was supported by probable

cause." *Id*. at 1250. "'In the ordinary case, an officer cannot be expected to question the

magistrate's probable-cause determination' because 'it is the magistrate's responsibility to determine

whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting

in form with the requirements of the Fourth Amendment.'" *Messerschmidt*, 132 S.Ct at 1245

(quoting *Leon*, 468 U.S. at 921) (internal modification omitted).

As discussed in Section I above, Adreani received a tip from an informant with whom he had

had a positive track record, and he took several steps to corroborate the information he had obtained.

After completing his investigation, Adreani sought and obtained approval of his complaint by his

watch commander and an assistant state's attorney. (Pl.'s LR Resp. ¶ 54 and Ex. 1.) He then

presented it and the informant to the warrant-issuing judge. The judge placed Doe under oath, and

questioned him about the warrant application. Adreani thus took every step that could reasonably

be expected of him, and given these circumstances, it cannot be said that no reasonably competent

officer would have requested the warrant. *Messerschmidt*, 132 S.Ct at 1249-51.

Montalvo's brief and undeveloped argument about Adreani's personal doubt about Montalvo

is not supported by the record, and does not change the analysis for all of the reasons set forth in

Section I above. Because, among other things, Doe had been reliable in the past, had specifically

identified Montalvo by name and described his year long knowledge of him, positively identified

him from a photo, and appeared before the warrant issuing judge, it can not be said that Adreani's

actions were unreasonable. "When a probable-cause determination was based on reasonable but mistaken assumptions, the person subjected to a search . . . has not necessarily been the victim of a constitutional violation." *Herring v. U.S.*, 555 U.S. 135, 139 (2009). Qualified immunity applies here because even if probable cause had not been established, a reasonable police officer could have believed probable cause existed and accordingly would not have understood his actions to violate a constitutional right. *See Fleming*, 674 F.3d at 879-81.

### III.   *Monell* **Claim**

Because there is no genuine dispute of material fact and Adreani is entitled to a judgment on Montalvo's claim, his claim under *Monell v. Dept. of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978) necessarily fails as well. *See Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007); *Thompson v. Boggs*, 33 F.3d 847, 859 n. 11 (7th Cir. 1994).

### CONCLUSION

For all of the reasons set forth above, Defendants' Motion for Summary Judgment [dkt 106] is granted. Judgment is entered for the defendants and against the plaintiff. Terminate case.

IT IS SO ORDERED.

_____
Geraldine Soat Brown
United States Magistrate Judge

Dated: March 21, 2013

20